IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                  Case Nos.:      3:12cr83/MCR/EMT
                                                                3:13cv616/MCR/EMT

JAIME ALEXANDER SORIANO-GARCIA
_____

## REPORT AND RECOMMENDATION

This matter is before the court upon the "Government's Motion to Dismiss Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (doc. 35) and Defendant's response thereto (doc. 37).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the Government's motion should be granted.

## BACKGROUND

Defendant was charged in a three-count superseding indictment with three counts of knowingly possessing and using a fraudulent Resident Alien Card ("green card") in violation of 18 U.S.C. § 1546(a) (doc. 17).  The charges stemmed from three separate occasions wherein Defendant presented a fraudulent green card in order to prove his eligibility for and secure gainful employment (*see* doc. 22).

Represented by appointed counsel, Jennifer Hart of the Office of the Federal Public Defender, Defendant entered a plea of guilty as charged on December 12, 2012 (docs. 21–23).  The Statement of Facts, signed by Defendant, reflected that Defendant had presented fraudulent green cards on three separate occasions as proof of his eligibility to work in the United States (doc. 22 at 1–3).  After Defendant was arrested in connection with these charges and advised of his Miranda

rights, he admitted to having purchased a counterfeit green card and Social Security card in 2004 and having used them to secure employment in 2010 (*id*. at 2).  Defendant also admitted to having presented a different fraudulent green card to his current employer in 2012 (*id*.).  Further investigation revealed that Defendant had previously presented the same fraudulent green card he used in 2010 to secure employment to another employer in 2008 (*id*. at 3).

Defendant was assisted at the plea proceeding by an interpreter, although counsel stated that her client spoke English "fairly well" (doc. 39 at 4).  The record reflects that counsel read the plea documents to her client in English, and that the interpreter read each of the documents to him in Spanish, as well (*id.* at 4, 11).  The court also highlighted to Defendant various provisions of the plea document and, relevant to the claim raised in the instant motion, specifically noted that the agreement provided that "to the extent you are not a citizen of the United States, then this conviction may adversely affect your immigration status and may lead to your deportation or removal" (*id*. at 15, citing to doc. 21 at 3).  Defendant acknowledged that he understood this possible consequence (*see* doc. 39 at 13).  Additionally, Defendant's attorney stated that Defendant had an immigration attorney who was "waiting for this case to be resolved so that they can address that matter" (*id*. at 22), and she acknowledged—on behalf of herself and her client—that the district court did not have jurisdiction to address the immigration issue (*id*.).  Finally, Defendant's attorney indicated to the court that Defendant waived the preparation of a full presentence report (*id.* at 21–22).

The Presentence Investigation Report ("PSR") assessed a base offense level of 8 (doc. 27, PSR ¶ 16).  After a two-level adjustment for acceptance of responsibility, the total offense level was 6 (PSR ¶¶ 22, 23).  Defendant had no criminal history points and, correspondingly, a criminal history category of I (PSR ¶ 29).  The applicable advisory guidelines range was 0 to 6 months (PSR ¶ 44).

On February 7, 2013, Defendant was sentenced to a term of 94 days with credit for time served since November 6, 2012, with no supervised release, fine, or special monetary assessment (docs. 30, 40).  Defendant's entire sentence was thus completed the day of sentencing.  Counsel noted at sentencing that Defendant was from El Salvador, "a very dangerous country he'll be forced to go back to now" (doc. 40 at 3).  When Defendant was given the opportunity to address the court he stated as follows:

Case Nos.: 3:12cr83/MCR/EMT; 3:13cv616/MCR/EMT

> I will appreciate it if you could please give me time served so Immigration can decide on my immigration status here in this country to see if I can remain here to maintain my family. I have three very young children and stepchildren, too. There is—there is a lot of bills to pay. So other than that I—if I couldn't help them, then there's nothing I can do.

(doc. 40 at 4). The court noted the fact of the immigration detainer that would become effective upon Defendant's service of his sentence (*id*. at 5). It wished Defendant luck in El Salvador, should he be removed, and noted that Defendant's removal would be up to the immigration officials (*id*. at 7). Defendant did not appeal.

Defendant timely filed his motion to vacate, through counsel, on December 5, 2013. He raises a single ground for relief, claiming that counsel was constitutionally ineffective because she did not provide him with correct and specific information regarding the immigration consequences of his plea. Defendant contends that had he known that his offense of conviction qualified as a "crime involving moral turpitude" for immigration purposes and that he would be ineligible for an immigration bond as well as unidentified forms of "immigration relief," he would not have pleaded guilty and would have gone to trial (doc. 32 at 4).

The Government moved to dismiss Defendant's § 2255 motion, contending that the court does not have jurisdiction to consider it, and alternatively, if considered on the merits as a petition for a writ of coram nobis, that it should be denied.

## LEGAL ANALYSIS

As an initial matter, the Government asserts that the court does not have jurisdiction to consider Defendant's motion as Defendant was not under sentence of this court at the time he filed his § 2255 motion (doc. 35 at 2). Defendant concedes that the Government is correct, and moves in his response for this court to consider the § 2255 motion as a motion for a writ of error coram nobis (doc. 37).

A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255. United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002). This is because, even after a sentence has been served, the results of the conviction may persist. *Id*. (quoting United States v. Morgan, 346 U.S. 502, 512–13 (1954)). The writ of error coram nobis acts as an assurance that

deserved relief will not be denied as a result of the technical limitations of other post-conviction remedies.  *Id*. (citations omitted).  In order for a defendant to obtain relief, the error must have been of such a "fundamental character" as to have "rendered the proceeding itself irregular and invalid." *Id*. (quoting Morgan, 346 U.S. at 509 n.15).

In this case, Defendant raises a single claim of constitutional error, specifically, that counsel's performance was constitutionally deficient because she failed to advise him of the immigration consequences of entering a guilty plea.

In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); *see also* Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two-part test also applies to guilty pleas. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

The Supreme Court has unquivocally held that the performance of an attorney who fails to inform a non-citizen client of the deportation consequences of a guilty plea is constitutionally deficient.  Padilla v. Kentucky, 559 U.S. 356, 374 (2010).  The underlying rationale is that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Id.* at 368 (quoting Immigration and Naturalization Service v. St. Cyr, 533 U.S. 289, 322–23 (2001) (internal quotations omitted)).  However, because Strickland applies to a claim concerning advice regarding deportation, in order to be entitled to relief in such a situation, a defendant must also demonstrate prejudice.  *Id*. at 366, 374.  That is, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *See id*. at 359; Lafler, 132 S. Ct. at 1384–85 (citing Hill, 474 U.S. at 59); Figuereo-Sanchez v. United States, 678 F.3d 1203, 1209 (11th Cir. 2012). In doing so, a defendant must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 559 U.S. at 372.  The Court noted that it is "often

quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong." Padilla, *Id*. at 371 n. 12.

In this case, the Government has not submitted an affidavit from Defendant's former attorney, Jennifer Hart, detailing any discussions she had with Defendant concerning the deportation consequences of his plea. It concedes that normally an evidentiary hearing would be necessary to resolve factual questions regarding the constitutional adequacy of counsel's representation (*see* doc. 35 at 6). However, it argues that such a hearing is not necessary, because regardless of whether Ms. Hart complied with her constitutional duty to fully discuss the direct immigration consequences of the plea with her client, Defendant has failed to show prejudice.

The Eleventh Circuit's recent decision in Gutierrez v. United States, No. 13-10990, 2014 WL 1227482 (11th Cir. Mar. 26, 2014) is instructive. Gutierrez, who was an illegal alien, challenged in a motion to vacate the voluntariness of his guilty plea to drug charges, claiming that counsel had not advised him that his guilty plea could result in his deportation. The magistrate judge recommended denial of Gutierrez's motion, finding that he could not show prejudice because he was an illegal alien who was subject to deportation even before his guilty plea. Gutierrez, 2014 WL 1227482, at *1. The district court denied the motion to vacate, but for a different reason. It found that defendant Gutierrez was not prejudiced by any lack of advice by counsel because he was independently aware of his deportability. *Id*. at *2. The court granted a certificate of appealability on the question of the retroactivity of Padilla.

On appeal, Gutierrez raised two new claims, asserting that counsel had affirmatively told him that he would not face mandatory deportation, and that his deportation to Mexico would place him and his family in danger due to his cooperation. Gutierrez, 2014 WL 1227482, at *2. The Eleventh Circuit declined to review the claims that had not been raised below. It nonetheless found no error in the district court's denial of the motion because (1) Gutierrez was aware of the risk of deportation, and (2) even if he was not so aware, it would not have been rational for him to reject the plea bargain. *Id*. The Eleventh Circuit further found that it was not clear error for the district court to

infer that Gutierrez knew of the risk of deportation under the circumstances of his case.[1] The court went on to state that even if Gutierrez had not been aware of the risk of deportation, it would not have been rational for him to reject the plea bargain for several reasons including the fact that he had never obtained legal status and was thus subject to removal, there was overwhelming evidence against him, and he had the prospect of receiving a more favorable sentence by pleading guilty. Gutierrez, 2014 WL 1227482, at *3.

In this case, Defendant's plea agreement specifically placed him on notice that his conviction could affect his immigration status and lead to his deportation or removal (doc. 21 at 3). The court read this provision aloud to Defendant at his rearraignment, and he acknowledged that he understood (doc. 39 at 15). Furthermore, regardless of what advice may have been provided to Defendant by his court-appointed counsel, Jennifer Hart, the record reflects that Defendant had consulted with, or possibly retained, an immigration attorney who intended to address the immigration matter once Defendant's criminal case was resolved (*id*. at 22). Finally, Defendant's own remarks to the court at sentencing revealed that he knew that the question of whether he would be able to stay in the United States after his conviction was unresolved (doc. 40 at 4). Because the record in this case establishes that Defendant was aware of the deportation consequences of his plea, he cannot show prejudice under Strickland. Gutierrez, 2014 WL 1227482, at *2; Jiminez v. Holder, 535 F. App'x 601 (9th Cir. 2013) (defendant failed to demonstrate prejudice, and could not demonstrate prejudice, where she was informed of possible immigration consequences by the plea agreement and at the plea colloquy); *cf.* United States v. Urias-Marrufo, 744 F.3d 361, 368–69 (5th Cir. 2014) (noting, with respect to a motion to withdraw a plea based on a Padilla claim, that "it is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a

---

[1] Specifically, the appellate court noted:

> Mr. Gutierrez has never made an allegation that he was unaware of the risk of deportation, including when the district court informed him of this possibility during his sentencing hearing. The district court further explained that Mr. Gutierrez finished high school and studied law in college for one year in Mexico; his life revolved largely around drug trading with other illegal immigrants from Mexico, notably in a leadership role; and he was in the country illegally.

Gutierrez, 2014 WL 1227482, at *2.

Case Nos.: 3:12cr83/MCR/EMT; 3:13cv616/MCR/EMT

plea colloquy"; also noting that Padilla "announced a new, clearly defined, and relatively limited duty for criminal defense attorneys, [and thus] concerns a narrow factual inquiry compared to most Strickland claims") (citation omitted).

With respect to Defendant's decision to enter a plea, the court notes that Defendant was facing a relatively short sentence, compared with the huge deportation consequences and his fears about returning to his native El Salvador. Additionally, although counsel could not have known this for certain at the time, Defendant's exposure under the guidelines would likely have been identical if he had been convicted after a trial.[2] Nonetheless, there would have been no benefit to Defendant in rejecting the plea and proceeding to trial. Due to his illegal status, Defendant was deportable regardless of whether he was convicted. Furthermore, in light of his admissions to law enforcement, a conviction would have been almost certain at trial. Had he proceeded to trial, he likely would have spent more time in custody awaiting trial and sentencing. Finally, Defendant had a strong interest in prompt resolution of the criminal proceedings so his immigration situation could be addressed. Thus, it was not irrational for him to have pleaded guilty.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown his entitlement to relief under 28 U.S.C. § 2255 or pursuant to a writ of error coram nobis. He has also failed to show that an evidentiary hearing is warranted. Therefore, Defendant's motion should be denied.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how

---

[2] Assuming all sentencing factors with the exception of the acceptance adjustment remained the same, Defendant would have had a total offense level of 8 and his criminal history category would have remained I. Thus, after trial the applicable advisory guidelines range would have been 0 to 6 months, as it was after Defendant's guilty plea.

to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The Government's motion to dismiss (doc. 35) be **GRANTED**.

2. Defendant's motion to vacate, set aside, or correct sentence (doc. 32), alternatively construed as a motion for a writ of error coram nobis, be **DENIED**.

3. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 27th day of May 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**